IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICHAEL LOISEAU,

    Petitioner,

v.                               Civil Action No. 3:12CV580

HAROLD W. CLARKE,

    Respondent.

**MEMORANDUM OPINION**

Michael Loiseau, a Virginia prisoner proceeding pro se, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition") challenging his convictions in the Circuit Court of Spotsylvania County ("Circuit Court"). Respondent moves to dismiss, inter alia, on the ground that the one-year statute of limitations governing federal habeas petitions bars the § 2254 Petition. Loiseau has responded. The matter is ripe for disposition.

**I.   PROCEDURAL HISTORY**

**A.   State Proceedings**

Loiseau pled guilty during a jury trial to drug kingpin and racketeering charges. On March 10, 2010, the Circuit Court entered final judgment and sentenced Loiseau to life plus twenty years with all but twenty years suspended. Commonwealth v. Loiseau, Nos. CR09-110 and CR09-669, at 1-5 (Va. Cir. Ct. Mar. 10, 2010). Loiseau filed no appeal.

On March 6, 2012, Loiseau filed a petition for a writ of habeas corpus in the Supreme Court of Virginia raising several claims of ineffective assistance of counsel. Petition for Writ of Habeas Corpus 1, Loiseau v. Dir. of the Dep't of Corr., No. 120378 (Va. filed Mar. 6, 2012). On August 2, 2012, the Supreme Court of Virginia dismissed Loiseau's petition on the merits. Loiseau v. Dir. of the Dep't of Corr., No. 120378 (Va. Aug. 2, 2012).

B. **Federal Habeas Petition**

On August 6, 2012,[1] Loiseau filed his § 2254 Petition in this Court. In his § 2254 Petition, Loiseau argues that trial counsel rendered ineffective assistance by:

| | |
|---|---|
| Claim One: | Failing to object to new evidence during trial (Mem. Supp. § 2254 Pet. (ECF No. 3) 7); |
| Claim Two: | Failing to "follow the strategy to re-cross examine" a witness (id. at 8);[2] |
| Claim Three: | Failing to object to the Commonwealth's "editing of a recorded drug transaction" (id. at 9); |
| Claim Four: | Abandoning his client at trial (id. at 10); |
| Claim Five: | Failing to investigate the grand jury (id. at 11); and, |

---

[1] The Court deems the § 2254 Petition filed on the date that Loiseau swears that he placed the petition in the prison mailing system. See Houston v. Lack, 487 U.S. 266, 276 (1988).

[2] The Court corrects the capitalization in the quotations from Loiseau's submissions.

2

Claim Six: Failing to argue a probable cause motion (id. at 13).

## II. ANALYSIS

### A. Statute Of Limitations

Respondent contends that the federal statute of limitations bars Loiseau's claim. Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2244 to establish a one-year period of limitation for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. Specifically, 28 U.S.C. § 2244(d) now reads:

1. A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

    **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    **(D)** the date on which the factual predicate of the claim or claims presented could

have been discovered through the exercise of due diligence.

2. The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

**B. Commencement And Running Of The Statute Of Limitations**

Loiseau's judgment became final on Friday, April 9, 2010, the last day to file an appeal with the Court of Appeals of Virginia. Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired . . . ." 28 U.S.C. § 2244(d)(1)(A))); Va. Sup. Ct. R. 5A:6(a) (requiring notice of appeal to be filed thirty days after entry of final judgment). The limitation period began to run on April 10, 2010, and 696 days elapsed before Loiseau filed his state petition for a writ of habeas corpus on Tuesday, March 6, 2012. See 28 U.S.C. § 2244(d)(2).[3]

---

[3] The Court notes that the Circuit Court entered an Amended Conviction/Sentencing Order on July 26, 2010, that corrected a clerical error in the March 10, 2010 final judgment. Even assuming arguendo that this amended order serves as the date of final judgment, Loiseau's § 2254 Petition remains untimely. Loiseau's conviction would have become final on August 25, 2010, and his time to file his § 2254 Petition would have expired on August 25, 2011.

4

## C. Statutory Tolling

Though Loiseau filed a petition for a writ of habeas corpus in the Supreme Court of Virginia on March 6, 2012, the AEDPA statute of limitations expired on April 10, 2011, nearly one year before Loiseau filed his state petition. Thus, because the limitation period had expired, statutory tolling fails to apply. Deville v. Johnson, No. 1:09cv72(CMH/TRJ), 2010 WL 148148, at *2 (E.D. Va. Jan. 12, 2010) (citing Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000)). Accordingly, unless Loiseau demonstrates entitlement to either a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(B)-(D) or equitable tolling, the statute of limitations bars his § 2254 Petition. Neither Loiseau nor the record suggests any plausible basis for equitable tolling or a belated commencement of the limitation period.

## III. MOTIONS TO AMEND

On February 15, 2013 and May 31, 2013, Loiseau filed Motions for Leave to Amend his § 2254 Petition. (ECF Nos. 19, 22.) Loiseau seeks to add two claims that the Commonwealth suppressed material evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). While the Court believes the statute of limitations bars Loiseau's new claims just as it bars his § 2254 Petition, see Ingram v. Buckingham Corr. Ctr., No. 3:09CV831, 2011 WL 1792460, at *1 (E.D. Va. May 5, 2011) (citing United

5

States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000)), because of the evident lack of merit of the Brady claims, the Court addresses the merits of Loiseau's new claims.

Brady and its progeny "require[ ] a court to vacate a conviction and order a new trial if it finds that the prosecution suppressed materially exculpatory evidence." United States v. King, 628 F.3d 693, 701 (4th Cir. 2011). In order to obtain relief under Brady a litigant must "(1) identify the existence of evidence favorable to the accused; (2) show that the government suppressed the evidence; and (3) demonstrate that the suppression was material." Id. (citing Monroe v. Angelone, 323 F.3d 286, 299 (4th Cir. 2003)). Under the Brady analysis, evidence is material if it generates a "'reasonable probability'" of a different result at trial had the evidence been disclosed. Moseley v. Branker, 550 F.3d 312, 318 (4th Cir. 2008) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). "'The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" Id. (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)).

Here, Loiseau pled guilty to the drug kingpin and racketeering charges, in the midst of a jury trial, after the Commonwealth presented numerous witnesses and evidence. The

6

Court recognizes that in the context of a guilty plea, Brady may have no applicability. See United States v. Moussaoui, 591 F.3d 263, 285 (4th Cir. 2010) (explaining that the "Brady right, however, is a trial right. . . . and exists to preserve the fairness of a trial verdict and to minimize the chance that an innocent person would be found guilty") (citing cases).[4] Assuming arguendo Brady applies in the context of his guilty plea, Loiseau still fails to demonstrate the materiality of the evidence supporting his Brady claims.[5] Loiseau also fails to

---

[4] In Moussaoui, the United States Court of Appeals for the Fourth Circuit explained that when a defendant enters a guilty plea, Brady's concerns in preventing the conviction of an innocent defendant "are almost completely eliminated because his guilt is admitted." 591 F.3d at 285 (citations omitted). But see United States v. Fisher, 711 F.3d 460, 462 (4th Cir. 2013) (finding an "officer's affirmative misrepresentation, which informed the defendant's decision to plead guilty and tinged the entire proceeding, rendered defendant's plea involuntary and violated his due process rights").

[5] In Kyles, the Supreme Court explained that in Bagley, "it adopted the same formulation for assessing materiality as it had for gauging prejudice in Strickland [v. Washington, 466 U.S. 688, 694 (1984)] confirming that 'a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal.'" Tice v. Johnson, 647 F.3d 87, 110-11 (4th Cir. 2011) (quoting Kyles, 514 U.S. at 434). In the context of a guilty plea, the Supreme Court modified the prejudice aspect of Strickland to require a showing that "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Following the Supreme Court's reasoning in Kyles and Bagley, because Loiseau first proceeded to trial and then pled guilty during trial to the kingpin and racketeering charges, to demonstrate "materiality" of the evidence, Loiseau must show that, but for the Government's failure to disclose the evidence, a reasonable probability exists that Loiseau would have not pled

demonstrate the materiality of the evidence in the trial context.

## A. Loiseau's First Motion For Leave To Amend

In his first Brady claim, Loiseau argues that he requested and received on November 20, 2012, a certificate of analysis "relat[ing] to the DNA testing of the plastic bags that contained the drugs" from the Department of Forensic Science. (Mot. Amend. (ECF No. 19) 3.)[6] Loiseau interprets these results as "negative for [Loiseau's] DNA" and suggests that "[t]he evidence was material to the defense because it showed no physical connection between your petitioner and the evidence used to convict." (Id.) Respondent explains that Loiseau's allegation that "the test results were negative for his DNA" is a "gross mischaracterization of the certificate of analysis". (Resp't's Obj. to Mot. Amend (ECF No. 21) 8.) Instead, the certificate states "that no DNA evidence was obtained from the bag." (Id.) As discussed below, Loiseau fails to demonstrate the materiality of the evidence in light of the extensive evidence of his guilt.

Loiseau pled guilty to the drug kingpin charges pursuant to section 18.2-248(H1) of the Virginia Code, and racketeering charges, pursuant to sections 18.2-514 & 515 of the Virginia

---

guilty, but continued with his trial. As discussed below, Loiseau makes no such showing.

[6] The Court employs the pagination assigned to both of Loiseau's Motions to Amend by the CM/ECF docketing system.

8

Code, after the Commonwealth presented numerous witnesses and evidence demonstrating Loiseau's guilt. (Br. Supp. Mot. Dismiss Ex. 2, Plea Agreement, at 14-16.) Section 18.2-248(H1) of the Virginia Code, states, in part:

> Any person who was the principal or one of several principal administrators, organizers or leaders of a continuing criminal enterprise shall be guilty of a felony if . . . the person engaged in the enterprise to manufacture, sell, give, distribute or possess with the intent to manufacture, sell, give or distribute [between five and less than ten kilograms of a mixture or substance containing detectable amounts of cocaine] during any 12-month period of its existence . . . ."

Va. Code Ann. § 18.2-248(H1)(2) (2008).

Section 18.2-514 of the Virginia Code provides, in part, that:

> It shall be unlawful for an enterprise, or for any person who occupies a position of organizer, supervisor, or manager of an enterprise, to receive any proceeds known to have been derived directly from racketeering activity and to use or invest an aggregate of $10,000 or more of such proceeds in the acquisition of any title to, or any right, interest, or equity in, real property, or in the establishment or operation of any enterprise. . . . [or] to directly acquire or maintain any interest in or control of any enterprise or real property through racketeering activities.

Va. Code. Ann. § 18.2-514(A)-(B) (2008).[7]

---

[7] In exchange for his guilty plea, the Commonwealth agreed to amend the Indictment alleging a violation of Va. Code Ann. § 18.2-248(H2) to a violation of Va. Code Ann. § 18.2-248(H1), which carries a lesser term of imprisonment. (Br. Supp. Mot. Dismiss. Ex. 2, Plea Agreement, at 14). Section 18.2-248(H2) carries a term of life imprisonment "with no suspension in whole or in part," unless the defendant provides substantial cooperation which permits the court to lower the sentence to a

9

In his Plea Agreement, Loiseau agreed that the Commonwealth possessed extensive evidence, "which [Loiseau] stipulate[d] can all be proven by the Commonwealth," demonstrating that Loiseau engaged in the importation and sale of cocaine as the principal organizer for a period between January 1, 2008 and December 31, 2008. (Br. Supp. Mot. Dismiss Ex. 2, Plea Agreement, at 1-12). The Stipulation of Facts provided that many officers' and agents' investigation had yielded evidence that Loiseau organized and led the importation and distribution of cocaine over a twelve-month period. (Id. at 2.)

Officers set up a controlled buy of cocaine from Loiseau on December 1, 2008. (Id.) The officers recorded a phone call between Laurence Gaines, and subsequently Loiseau, and a confidential informant, Jamil Washington. (Id. at 2-3.) During the phone call, Loiseau asked Washington whether he wanted to buy a half kilogram or a full kilogram of cocaine, and the two set up the logistics of the cocaine purchase for that night. (Id.) At the meeting site for the drug buy, officers arrested Gaines, who was operating a car owned by Loiseau, with two ounces of cocaine. (Id. at 3.) From witness interviews, the Commonwealth learned that Loiseau obtained cocaine from Atlanta, and learned about Loiseau's efforts to hide cocaine and nearly

---

forty-year mandatory minimum. Va. Code Ann. § 18.2-248(H2)(5). Section 18.2-248(H1), instead, carries a term of life imprisonment with a mandatory minimum sentence of twenty-years. Va. Code Ann. § 18.2-248(H1)(5). Without the benefit of his guilty plea, Loiseau faced a sentence of life in prison.

10

$200,000 on the night of Gaines's and Loiseau's arrest. (Id. at 3-5.)

The Commonwealth also possessed extensive evidence through at least six witnesses that Loiseau began to distribute drugs in 2007 and that Loiseau used those six witnesses to further his cocaine distribution. Specifically, Gaines would have testified that in 2007 and 2008 he served as a "middle man" who obtained drugs from Loiseau and distributed drugs to Washington and others. (Id. at 5-6.) Gaines observed Loiseau with a kilogram of cocaine in 2007. (Id. at 6.)

Washington would have testified that he obtained ten kilograms of cocaine from Loiseau during 2007 and 2008. (Id. at 6-7.) In 2008, a kilogram of cocaine cost $28,000. (Id.) Washington bought cocaine to redistribute to other drug dealers and Loiseau knew of this arrangement. (Id.) Washington once observed Loiseau with two one-kilogram "bricks" and observed Loiseau with one kilogram quantities of cocaine on at least five occasions. (Id. 7-8.)

Danyelle Simpson would have testified that she drove to Atlanta for Loiseau between five to ten times after May 2008. (Id. at 8.) Simpson also drove to New York for Loiseau. (Id. at 9.) Loiseau would "take a bag she had packed and repack it with her out of the room." (Id. at 8.) Loiseau drove separately, ahead of her, and warned her of police radar. (Id. at 9.) Loiseau paid Simpson $2500 for each trip in addition to

11

paying for her hotel, gas, and rental car. (Id.) A few days after Loiseau's arrest, police found a duffle bag in Simpson's house containing $146,240 that Simpson stated belonged to Loiseau. (Id. at 3-4.)

Tana Williams would have testified that she drove to Atlanta for Loiseau at least three times in 2007 and 2008. (Id. at 9.) Loiseau gave Williams bags of money to transport, and Loiseau would meet her in an Atlanta hotel to pick up the money. (Id.)

Donald and Ronald Williams would have testified that they drove to Atlanta with money they received from Loiseau and would bring packages of cocaine back to Virginia for Loiseau. (Id. 10-11.) On one trip, Ronald drove a ten to fifteen-pound package from Atlanta, and on another trip Loiseau paid Ronald $5000 to bring back five kilograms of cocaine. (Id. at 11.) Donald Wilson would testify that he began "to run narcotics" for Loiseau in 2004. (Id. at 11-12.) In 2007, Donald made ten to fifteen trips to Atlanta to obtain cocaine for Loiseau. (Id.) On each trip Donald obtained between three and six kilograms of cocaine. (Id.) Donald made each trip at Loiseau's direction, drove packages of money from Loiseau to Atlanta, and returned to Virginia with packages of cocaine. (Id.) Donald also purchased large quantities of the cutting agent, Inositol, for Loiseau. (Id.) Loiseau paid Donald in cocaine and cash. (Id.)

12

In light of the Commonwealth's extensive evidence of Loiseau's guilt of organizing a cocaine distribution enterprise that ran for at least one year, Loiseau fails to demonstrate the materiality of the Commonwealth's nondisclosure of the certificate of analysis of the bag of drugs from the December 1, 2008 controlled buy. Moreover, the fact that the bag of drugs tested negative for Loiseau's DNA is not convincing evidence of Loiseau's innocence as the organizer of the large-scale cocaine distribution enterprise.

Furthermore, Loiseau provides no persuasive argument that, but for the nondisclosure of the certificate of analysis, a reasonable probability exists that Loiseau would have insisted on not pleading guilty, and on proceeding with the jury trial. Thus, Loiseau fails to demonstrate the materiality of the evidence. Loiseau's first Motion for Leave to Amend (ECF No. 19) will be denied as futile.

### B. Loiseau's Second Motion For Leave To Amend

In Loiseau's second Motion for Leave to Amend, Loiseau argues that in May of 2013 he received an affidavit from Edward Mack "who was questioned in connection to the charges that were ultimately brought against [Loiseau] . . . wherein Edward Mack made a statement that was recorded by the detective." (Mot. Amend. (ECF No. 22) 43.) Loiseau vaguely argues that based upon this affidavit, "the Commonwealth suppressed evidence by failing to make the statement obtained by Detective Doyle an official

13

part of the record." (Id.) In the affidavit attached to Loiseau's motion, Edward Mack states that he told Detective Doyle that he had no knowledge that Loiseau sold drugs, denied any involvement with Loiseau's drug dealing activities, and informed the detective that he met Loiseau playing flag football. (Id. at 7.)

The Court fails to discern the role of Edward Mack in the Commonwealth's case against Loiseau. Loiseau's Plea Agreement contains no mention of Edward Mack in the Stipulation of Facts. Loiseau also provides no pertinent background information about Mack in support of his Brady claim. Thus, Loiseau does not demonstrate that the absence of Mack's statement to Detective Doyle played a material part in Loiseau's decision to plead guilty.

Moreover, for the same reasons as stated above, Loiseau fails to demonstrate that Mack's statement to Detective Doyle is material in light of Loiseau's guilty plea, his admission of guilt to the charges, and the overwhelming evidence of Loiseau's guilt. Thus, Loiseau's second Brady claim lacks merit. Accordingly Loiseau's second Motion for Leave to Amend (ECF No. 22) will be denied as futile.

### IV. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 5) will be granted. Loiseau's Motions for Leave to

14

Amend (ECF No. 19, 22) will be denied as futile. Loiseau's § 2254 Petition will be denied, and the action will be dismissed.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this requirement only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983)). Loiseau fails to meet this standard. A certificate of appealability will therefore be denied.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to Loiseau and counsel for Respondent.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 25 2013

15